**Donna BROWN, Plaintiff,**

v.

**NATIONAL CITY CORPORATION and National City Bank, Defendants.**

**Civil Action No. 3:96CV–19–S.**

United States District Court, W.D. Kentucky.

Aug. 14, 1997.

Terry E. Fox, Gilbert Hale Nutt, Nutt & Mayer, Louisville, KY, for Plaintiff.

Michael A. Valenti, Louisville, KY, William T. Repasky, Nat. City Bank Law Dept., Louisville, KY, for Defendants.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

Before the court is a motion for summary judgment filed by the defendant, National City Corporation. For the reasons stated in this memorandum opinion, the motion will be granted by separate order, and this case will be dismissed.

### FACTS

Donna Brown was employed at the National City Processing Center, a subsidiary of the National City Corporation ("National City"). Brown's duties at the Center involved basic accounting and the preparation of payroll, federal, and FICA taxes. As an employee, Brown was covered by the National City Corporation Long–Term Disability Plan ("the Plan"). The Plan is self-administered by National City (the "Plan Administrator") in accordance with the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). By contract, CIGNA Group Insurance ("CIGNA") administers claims under the Plan on behalf of National City.

In 1985, Brown slipped and fell on a patch of ice outside her home and injured her back. Brown underwent numerous medical procedures and treatments between 1986 and 1992. On May 7, 1992, Brown was determined to be disabled from performing her job as a payroll accounting specialist. Following a 26–week waiting period, Brown began receiving long-term disability benefits under the Plan on November 5, 1992. The Plan called for long-term disability benefits to be paid to Brown for two years if Brown was unable "to perform the duties of [her] particular occupation" with National City. To receive benefits thereafter, she would have to be unable "to perform the duties of *any other* occupation to which [she] is or could become qualified." Plan § 3.2 at 10 (emphasis added).

On March 9, 1993, CIGNA opined in a letter to National City that it found no objective medical evidence supporting Brown's claim of long-term disability. Nonetheless, Brown continued to receive benefits. On January 13, 1994, CIGNA notified Brown that the end of her initial two-year period was approaching. CIGNA requested updated medical information from Brown to assess whether she was incapable of performing any employment for which she was or could become qualified based on her education, training or experience. National City selected

Dr. Rukmaiah Bhupalam to perform an independent medical examination. Dr. Bhupalam determined that Brown "may perform sedentary work which allows her to move about and does not require her to life more than small objects. The maximum weight she could lift is 5–10 pounds." *See* Rept. of Dr. Bhupalam, Ex. 8 to Def.'s motion (dated May 20, 1994).

On September 13, 1994, Brown's treating physician, Dr. Peter Kirsch, indicated to CIGNA that he had read Dr. Bhupalam's report and "essentially agree[d]." *See* Letter from Dr. Kirsch, Exh. 9 to Def.'s motion. A Transferable Skills Study performed by a certified vocational rehabilitation specialist (dated September 29, 1994) showed 19 occupations Brown could perform with minimal training. Exh. 10 to Def.'s motion.

On November 17, 1994, National City notified Brown that her long-term benefits were being terminated effective December 1, 1994, based on the evidence suggesting that Brown was able to perform sedentary work with weight restrictions. Brown then appealed the termination decision. As evidence of her disability, she provided a sworn statement from Dr. Kirsch indicating that he had treated Brown twice since November 1994 and believed her to still be disabled. Dr. Kirsch later testified that he

> had seen her subsequent to that time in November of '94 twice, and there was some question about her long-term disability at work, I believe, although I'm not I don't recall the details, but we had a lengthy discussion on May 4, 1995, and she indicated that her pain as opposed to getting better was increasing and convinced me—although I didn't really find any change in her objective findings she convinced me that in actuality at least for the present and the foreseeable future that she was not capable of any gainful employment.

Statement of Dr. Kirsch, Exh. 12 to Def.'s motion, at 9–10. Brown's appeal was denied on October 23, 1995.

Brown filed this suit in state court seeking long-term disability benefits since December 1, 1994 and a declaration of entitlement to future benefits. The case was removed here based on the preemption of Brown's state law claims by ERISA, 29 U.S.C. § 1001, *et seq. See* Mem. Op. and Order entered May 20, 1996 (denying motion to remand). Before us now is National City's motion for summary judgment.[1]

## DISCUSSION

The threshold issue on this motion for summary judgment is the extent of judicial review of National City's decision to discontinue long-term disability payments to Donna Brown. Brown having requested a jury trial—claims that our inquiry on this motion should be to decide whether there exists a genuine issue of material fact sufficient to send the case to the jury for determination. If we were to find no right to a jury, Brown argues that our review of National City's decision should be *de novo*, according no weight or presumption to the Plan Administrator's determination. National City counters that: *first*, there is no right to a jury trial in this case; *second*, our review is limited to the "arbitrary and capricious" standard; and *third*, no genuine issue of material fact exists as to whether the decision was arbitrary or capricious.

### A. Brown's Right to a Jury Trial

■ Our Memorandum Opinion and Order denying the motion to remand made it clear that this case is preempted by ERISA. Judicial review of ERISA benefits decisions is premised upon Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Brown argues that the "standard of review" question is irrelevant because she has demanded a jury trial. To that end, Brown directs our

---

1. National City Bank of Kentucky, the other defendant named in the complaint, has filed a motion under Fed R. Civ. P. 21 to drop it as a party to this suit. National City Bank of Kentucky (referred to as National City Bank in the complaint) claims misjoinder, and states that it never employed Donna Brown, does not administer the plan at issue, and does not participate in the determination of eligibility for benefits thereunder. Accordingly, it seeks to be dismissed from the suit. As the plaintiff has fried no objection, and in view of our disposition on National City's motion for summary judgment, the "Motion to Drop National City Bank of Kentucky as a Party" will be granted.

attention to four cases she claims stand for the proposition that this is a breach of contract case—legal in nature—in which a pension plan participant is entitled to a jury trial. *See* Pl.'s response at 5.

However, Brown ignores controlling precedent of the Sixth Circuit. In *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir.), *cert. denied*, 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988), the Sixth Circuit clearly held that a plaintiff is not entitled to a jury trial for denial-of-benefits claims under Section 502(a)(1)(B) of ERISA. The Sixth Circuit wrote:

> Having determined that Daniel's common law claims were preempted by ERISA, we conclude that the district court properly denied Daniel's demand for a jury. Although there may be actions under ERISA in which a jury trial is proper, in actions for recovery of benefits under section 502, 'there is no right to a jury trial.'

*Id.* at 268 (citations omitted). *Accord Bair v. General Motors*, 895 F.2d 1094, 1096 (6th Cir.1990) (applying *Daniel* to all "actions for recovery of benefits under Section 502"). Several other circuits have agreed, and none has disagreed. *See, e.g., Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1258 (2d Cir.1996); *Cox v. Keystone Carbon Co.*, 894 F.2d 647 (3d Cir.), *cert. denied*, 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990). Therefore, following the logic of *Daniel* and *Bair*, Brown has no right to a jury trial of her suit.

### B. The Applicable Standard of Review

■ We now turn to the *scope* of our review of National City's decision to deny Donna Brown long-term disability benefits after December 1994. Brown argues that we should conduct a *de novo* review; National City argues for the more limited "arbitrary and capricious" review. We find that the terms of the Plan in this case require us to conduct the narrower inquiry of the arbitrary and capricious standard.

The United States Supreme Court addressed the standard of review applicable to non-jury ERISA claims in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court held that a denial of benefits challenged under Section 502(a)(1)(B) is to be reviewed *de novo* unless the benefit plan expressly grants the Plan Administrator specific discretionary authority to determine the eligibility for benefits or to construe the terms of the Plan. 489 U.S. at 116, 109 S.Ct. at 957. *See also Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380–81 (6th Cir.1996). We must decide whether the terms of National City's Plan confer specific discretionary authority on the Plan Administrator to determine eligibility for benefits or construe the terms of the Plan. We think that any fair reading of the Plan leads to the conclusion that it grants specific authority to the Plan Administrator to both determine eligibility for benefits (specifically, via the appeals process) and to construe and interpret the terms of the plan.

It is undeniable that the Plan explicitly and unambiguously grants the Plan Administrator discretion to interpret the terms and conditions:

> § 6.4 In addition to the power and authority delegated to the Plan Administrator elsewhere in the Plan, the Plan Administrator shall have the power to discharge the duties described hereunder. Such duties include, but are not limited to, the following:
>
> 1. *To interpret the terms and conditions of the Plan;*
>
> 2. *To promulgate any rules and regulations as are deemed appropriate to carry out the purposes of the Plan*
> . . . .

*See* Plan § 6.4 at 17–18. This alone is probably sufficient to satisfy the *Bruch* standard for applying "arbitrary and capricious" review. *See Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1453 n. 4 (D.C.Cir.1992) (Ruth Bader Ginsburg, J.) ("Under *Firestone*, reasonableness review is in order if the administrator has 'discretionary authority to determine eligibility for benefits *or* to construe the terms of the plan.' Thus, § 7.7(a) ('power to interpret and construe' the plan) *or* § 7.4 (power to make 'final and binding' decisions) of the Pitney Bowes Plan, standing alone, would probably meet the *Firestone* test for deferential review.") (emphasis in original; citation omitted).

Looking further into the Plan, we also find that the Plan Administrator has the power to ultimately decide the eligibility for benefits, in view of the workings of the initial review of a denial and any subsequent appeal. If benefits are not paid initially, a participant must first file a written claim pursuant to the Plan § 6.10(A). Section 6.10(B) then contains crucial language:

> (B) Unless it *allows* such claim in full, the Plan Administrator shall ... cause written notice to be mailed to the claimant of the total or partial denial of the claim. Such notice shall ... include the specific reason or reasons for the denial of the claim....

Thus, the Plan speaks in terms of benefits "allow[ed]" (and, by implication, disallowed) by the Plan Administrator. It is this sort of discretionary authority that the Supreme Court indicated would qualify for less-exacting judicial review. Even more compelling, the appeals process mandates that an appeal be decided by the Plan Administrator; that the appellate decision be "based on the facts and the pertinent provisions of the Plan or Trust Agreement and the rules and regulations of the Plan Administrator"; and that the decision is "final and binding on all interested persons." *See* Plan § 6.10(C). The structure of the benefits process indicates that the Plan Administrator is charged with making the ultimate determination of eligibility for benefits. *See also Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 694 (6th Cir.1989), *cert. denied*, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990) (applying the arbitrary and capricious standard where the Plan provided that "[i]n case of any factual dispute hereunder, the Retirement Committee shall resolve such dispute giving due weight to all evidence available to it. The Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan. All such determinations shall be final, conclusive and binding except to the extent that they are appealed under the ... claim procedure.").

Brown continually argues that nowhere in the plan is it explicitly stated that "the Plan Administrator has discretion" to allow or deny benefits. We think that this approach is too narrow. In *Perez v. Aetna Life Ins. Co.*, 96 F.3d 813, 825 (6th Cir.1996), the court recognized that an ERISA plan need not contain the magic word "discretion" in order to qualify for the less-exacting standard of review. The court wrote:

> It is true that '[t]he Court in *Firestone [v. Bruch]* surely did not suggest that 'discretionary authority' hinges on incantation of the word 'discretion' or any other 'magic word.' Rather, the Supreme Court directed lower courts to focus on the breadth of the administrators' power—their 'authority to determine eligibility for benefits or to construe the terms of the plan.' "

*Id.* at 825–26 (citations omitted). The *Perez* court also approved of a decision authored by then circuit Judge Ruth Bader Ginsburg pointing out: "What counts, in sum, is the character of the authority exercised by the administrators under the plan." *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1454 (D.C.Cir.1992).

In *Perez*, the Sixth Circuit applied a *de novo* review, given the specific text of the plan at issue. Unlike the *Perez* plan, however, National City's plan specifically speaks of the Plan Administrator as "allowing" claims; it makes all appellate decisions of the Plan Administrator "final and binding" on all parties; and it gives the Plan Administrator discretion to interpret the terms and conditions of the plan, including the determination of whether a participant is "disabled." The thrust of these Plan provisions is to confer upon the Plan Administrator the ultimate power to determine eligibility for benefits and to interpret the terms and conditions of the plan. Therefore, we will confine our review to the narrow arbitrary and capricious standard.

## C. Application of the Arbitrary and Capricious Standard

In determining whether National City's decision to deny Brown long-term disability benefits under the plan was arbitrary and capricious, we will not substitute our own judgment for that of the Plan Administrator. *See Caterino v. Barry*, 8 F.3d 878, 883 (1st Cir.1993). Rather, the arbitrary and capricious standard is the "least demanding form of judicial review." *Davis*, 887 F.2d at 693.

A benefits decision is not arbitrary or capricious if "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Id.* Thus, the issue is whether National City can offer a reasoned explanation for denying Brown's appeal for continued benefits.

To gauge the reasonableness of National City's decision to deny Brown benefits we must look at the text of the Plan. Section 3.2 states:

> Long-Term Disability Benefits may be paid only upon medical verification of the Long–Term Disability, obtained from independent medical examinations made by a physician acceptable both to the Participant and the Plan Administrator. Such examinations shall determine, during the first two years from the inception of the Disability, whether the Participant is or is not able to perform the duties of his particular occupation with his employer, and *following such two-year period, whether the Participant is or is not able to perform the duties of any other occupation to which he is or could become qualified by education, training and experience* . . . .

Plan § 3.2 at 10–11 (emphasis added). The italicized portion above concerns the specific decision made by National City which spawned this litigation. We will not overturn the decision to deny benefits if it was reasonable for National City to conclude that, in late 1994, Donna Brown *was* able to perform the duties of any occupation to which she was or could have become qualified.

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Anderson v. Liberty Lobby,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the Supreme Court noted that Rule 56(c) asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Summary judgment is appropriate where there is no genuine issue of material fact in the case which requires a trial. *See*

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

National City points to the absence of "objective medical evidence" to support Brown's claim—and Brown's failure to provide any—as rendering its decision non-arbitrary and noncapricious. We find that there existed ample objective medical evidence from which National City could determine that Brown was not "disabled," as that term is defined in the Plan and interpreted by National City. Dr. Bhupalam, the physician to whom Brown was referred for an independent medical examination, opined that Brown *"may perform any sedentary work* which allows her to move about and does not require her to lift more than small objects." Brown's treating physician, Dr. Kirsch, then: "essentially agree[d]" with Dr. Bhupalam. Letter from Dr. Kirsch, Exh. 9 to Def.'s motion. Finally, a Transferable Skills Study was performed by a certified Vocational Rehabilitation Specialist which showed that Brown was capable of performing 19 occupations with little or no additional training. Exh. 10 to Def.'s motion. Given the weight of this evidence, we find no genuine issues of material fact as to whether the decision was unreasonable, arbitrary, or capricious: it was not. It appears to us to be a reasonable application of the evidence to the terms of the Plan.

Brown argues that National City *ignored* the disability opinion by Dr. Kirsch, who believed Brown was incapable of working. But the evidence is clear that National City *did* consider Dr. Kirsch's opinion. The Claims Administrator acknowledged receipt of the sworn statement, and there is no serious allegation that it went un-read. Essentially, Brown is arguing that National City did not accord enough—or even a decisive—weight to Dr. Kirsch's opinion. But there is nothing in the Plan or in law that requires the Plan Administrator to agree with the decision of the Participant's treating physician. On "arbitrariness" review, it is simply not our province to compare the weight, credibility, and persuasiveness of the medical and occupational authorities submitted to the Plan Administrator. The very crux of arbitrary and capricious review is that a court looks to see if the decision was

*supportable* given the evidence, not whether we agree with the importance given to various pieces of the evidence or with the decision itself.

There is nothing in the record to indicate that Dr. Kirsch was *ignored.* Moreover, we are not convinced that his statement would be enough to substantiate Brown's claim for long-term disability benefits. At no time did National City have the burden to *disprove* Brown's disability. The Plan requires Brown to proffer "objective medical evidence" of her disability. *See* Plan § 3.2. Dr. Kirsch's statement that Brown was disabled relies exclusively on Brown's own subjective assessment of her disability, but makes no *objective* assertions of its own. *See* Statement of Dr. Kirsch at 9–10 ("although I didn't really find any change in her objective findings she convinced me that in actuality at least for the present and the foreseeable future she was not capable of any gainful employment.") (emphasis added). Putting aside even the medical and occupational evidence against Brown, National City still had a "reasoned explanation" to deny Brown long-term disability benefits, namely her failure to provide any objective medical evidence as required by the Plan and interpreted by the Plan Administrator.[2]

In summary, we apply the arbitrary and capricious standard of review because the Plan commits to the Plan Administrator the ultimate determination of eligibility for benefits and the power to interpret the terms and conditions of the Plan. Under this standard of review, we consider whether there was a reasoned explanation, based on the evidence, for the decision to deny Donna Brown long-term disability benefits. The opinion of Dr. Bhupalam, the results of the occupational assessment, and the inability of Dr. Kirsch to render a contrary opinion based on objective medical evidence all provide a reasoned explanation for the Plan Administrator's decision here. There are no genuine issues of material fact in this case. Accordingly, we will grant the defendant's motion for summary judgment.

2. We note, too, that the Social Security Disability award provided by Brown to the Plan Administrator is not the sort of "objective medical evidence" that can support a benefits award. *See Dials v. SMC Coal & Terminal Co.,* 891 F.Supp.

## ORDER

For the reasons set forth in the memorandum opinion entered this date and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, National City Corporation, for summary judgment is **GRANTED.** Additionally, the unopposed motion of National City Bank to be dropped as a defendant pursuant to Fed.R.Civ.P. 21 is **GRANTED.** The plaintiff's "Motion for Leave to File a Reply to the Defendant's Reply" is **GRANTED,** and the brief was considered in deciding this motion. There being no just reason for delay, this is a final order.

373, 377 (E.D.Ky.1995) ("The Committee could have properly denied Dials' appeal regardless of the Social Security Administration's decision as long as the denial was not arbitrary or capricious.").